T.C. Memo. 2007-282

UNITED STATES TAX COURT

NORMAN C. AND ROSEMARY J. ECKERSLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16753-05.          Filed September 18, 2007.

<u>Arthur V. Pearson</u>, for petitioners.

<u>John W. Strate</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine respondent's determination of a $153,978 deficiency
in petitioners' 1999 Federal income tax.  We decide whether the
proceeds that petitioners received for settlement of a claim to
ownership of a life insurance policy are taxable as ordinary
income or as a capital gain.  We hold that the proceeds are taxed

as ordinary income.  Unless otherwise noted, section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some facts are stipulated and are found accordingly.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  Petitioners are husband and wife, and they jointly filed a 1999 Form 1040, U.S. Individual Income Tax Return.  They resided in Monterey, California, when their petition was filed with the Court.

In 1982, Norman C. Eckersley (petitioner) founded the Pacific Bank in San Francisco, California.  Pursuant to a written employment agreement dated January 11, 1983, petitioner served as Pacific Bank's chairman, president, and chief executive officer with duties customary to those positions.  On February 16, 1988, petitioner and Pacific Bank entered into an employment agreement (employment agreement) that stated that petitioner would serve a 5-year term of employment as chairman, president, and chief executive officer of Pacific Bank, with a term beginning on January 11, 1988.

The employment agreement contained a provision concerning insurance on the life of petitioner.  Paragraph 7 stated: "Eckersley has obtained insurance on his life from Crown Life

Insurance Company for a period of five years from October 27, 1987. Pacific will pay all premiums up to five year maturity and will be assigned to and for the benefit of his spouse" (Crown life policy).[1] The Crown life policy was issued on October 30, 1987, and had a face value of $1 million with the life insurance proceeds payable, if not already paid, on the maturity date of October 25, 2019. The Crown life policy provided for an initial premium payment of $21,639.70, with subsequent premiums of $25,170 due every 6 months, beginning on October 25, 1988. The policy provided that "guaranteed policy values" or "accumulation value" was calculated, in part, based upon a guaranteed interest rate of 4-1/2 percent, compounded annually. Upon issuance of the Crown life policy, Pacific Bank was both its owner and its beneficiary. On or about November 14, 1989, Pacific Bank changed the beneficiary of the Crown life policy to petitioner's spouse, Rosemary J. Eckersley (Ms. Eckersley).

On October 28, 1992, petitioner resigned as chairman and chief executive officer of Pacific Bank, but he remained as a director and was appointed chairman emeritus of Pacific Bank. Pacific Bank accepted petitioner's resignation on December 15,

---

[1] As noted below, the policy matures on Oct. 25, 2019, approximately 22 years after its issuance. The parties to the employment agreement apparently use the term "5 year maturity" to refer to the stated term of employment.

1992.  On June 18, 1993, petitioner tendered his resignation as a director.

On December 16, 1996, petitioners filed a lawsuit (lawsuit) in the Superior Court of California for the County of San Franciso.  The lawsuit alleged that Pacific Bank had breached the employment agreement by, inter alia, failing to transfer title of the Crown life policy to Ms. Eckersley, as provided for in the employment agreement.  On September 2, 1999, petitioners and Pacific Bank entered into a Settlement Agreement and Release (settlement agreement).  The settlement agreement stated that Pacific Bank would pay petitioners $265,563 on January 5, 2000; $675,645 within 5 business days of the dismissal of the case; and $6,250 per month for 20 years, beginning on September 1, 1999. The amounts payable were calculated as follows:  $340,000 as to a severance pay dispute; $500,000 as to the Crown life policy; $845,000 as the net present value of the monthly payments due for 20 years; and $101,208 to settle amounts previously due, totaling $1,786,504.  With regard to the Crown life policy, the settlement agreement stated that the $500,000 was payable "for confirmation of TPB's [Pacific Bank's] full rights to the Crown Life Policy No. 2432415 insuring the life of Norman C. Eckersley to settle the dispute regarding the ownership of the Policy and the net surrender values in the Policy."

During 1999, petitioners paid to their attorney, Mark Garay, $555,429 in legal fees related to the lawsuit (approximately one-third of the total settlement of $1,786,504).

Petitioners' 1999 Federal income tax return included a Schedule C, Profit or Loss From Business. On the Schedule C, petitioners reported income of $634,634, which included the $500,000 related to the Crown life policy. Also on Schedule C, petitioners claimed a deduction for legal expenses of $675,646. Petitioners reported no alternative minimum tax liability on this return.

Respondent determined in the notice of deficiency underlying this case that $500,000 of the income reported on Schedule C was not related to a trade or business and reclassified that amount as "Other Income" (not reported on Schedule C). Also, respondent disallowed $527,004 of the $675,646 of legal expenses because that portion was not an ordinary and necessary expense incurred in a trade or business but rather an expense that constituted a miscellaneous itemized deduction. Based on these changes, respondent determined that petitioners were now subject to alternative minimum tax, with the alternative minimum tax due of $149,246 representing the vast majority of petitioners' $153,978 deficiency.

OPINION

Petitioners asserted in their petition that the $500,000 of income and the $527,004 of legal fees were properly reported on their 1999 Schedule C. Petitioners abandoned those assertions at trial, asserting instead that petitioner received the $500,000 from Pacific Bank on a sale of the Crown life policy by petitioner to Pacific Bank. As petitioners now see it, the $500,000, less their basis in the policy, is taxable to them as a capital gain. Petitioners argue that their basis in the Crown life policy equaled the amount of the premiums that were taxed to them. Petitioners assert that $181,348.33 of the $500,000 was paid to them for the cash value of the Crown life policy, and the balance, $318,651.67, was paid to them for the policy's other attributes.

The credible evidence in the record does not allow us to find that petitioners had any basis in the Crown life policy, e.g., we are unable to find that petitioners paid any of the premiums on the policy or included in their gross income any of the premiums. Nor does the credible evidence allow us to find that the policy had any particular cash value. Thus, the issue that remains is whether the $500,000 received by petitioners is taxable as ordinary income or as a capital gain. Respondent observes that petitioners received the $500,000 in settlement of their claim to ownership of the Crown life policy, that the

policy was titled in the name of Pacific Bank, and that the policy was never titled in the name of either or both petitioners.  Respondent concludes that the $500,000 is taxable as ordinary income in that no property (other than money) ever changed hands in connection with the settlement and that the $500,000 was received by petitioners in extinguishment of any right that they may have had in the Crown life policy.

We agree with respondent that the $500,000 is taxable to petitioners as ordinary income.  In Nahey v. Commissioner, 111 T.C. 256 (1998), affd. 196 F.3d 866 (7th Cir. 1999), the taxpayers' S corporations acquired the assets of a corporation that included the acquired corporation's pending lawsuit against Xerox Corp. seeking damages for breach of contract.  The S corporations settled the lawsuit, and the taxpayers reported their share of the settlement proceeds as capital gain.  This Court held that the proceeds were not received by the S corporations from a sale or exchange.  The Court ruled that the S corporations' rights in the lawsuit vanished both in form and substance upon the receipt of the settlement proceeds and that Xerox Corp. received in the settlement nothing other than the discharge of the liabilities that arose as a result of the lawsuit.  Id. at 264-265;[2] accord Steel v. Commissioner, T.C.

---

[2]The Court of Appeals for the Seventh Circuit appears to have affirmed our decision in Nahey v. Commissioner, 111 T.C. 256
(continued...)

Memo. 2002-113 (holding that settlement proceeds were taxable as ordinary income because no sale or exchange of a capital asset occurred, with only one party having the right to receive property), affd. 78 Fed. Appx. 585 (9th Cir. 2003).

In determining whether a sale or exchange occurred for petitioners, we focus on whether Pacific Bank received anything in return for the $500,000; i.e., anything other than the discharge of petitioners' lawsuit claim concerning the policy. We are unable to conclude that it did. Petitioners argue that Pacific Bank received more than the extinguishment of the lawsuit

---

$^2$(...continued)
(1988), affd. 196 F.3d 866 (7th Cir. 1999), on a somewhat different rationale; i.e., that the right to recover in the lawsuit against Xerox, a substitute for lost profits, retained its character as an asset productive of ordinary income after it passed to the S corporations. By analogy, it seems likely that the Crown life policy, had its ownership been transferred to Ms. Eckersely, would have generated ordinary income to petitioners under sec. 83, at least to the extent of its cash surrender value (which has not been shown to have been less than the $500,000 received). Thus, it would appear that the $500,000 would have the character of ordinary income under the affirming court's reasoning as well as under that of our own opinion in Nahey (we relied on the absence of a sale or exchange). We recognize that Judge Cudahy in his concurring opinion in Nahey v. Commissioner, 196 F.2d at 870, expressed concern that the court's opinion might be difficult to reconcile with Pac. Transp. Co. v. Commissioner, 483 F.3d 209 (9th Cir. 1973), vacating and remanding T.C. Memo. 1970-41, a case that we would be obliged to follow were it directly on point given that it was decided by the court to which an appeal of this case lies. We do not believe that Pac. Transp. Co. has any applicability here where, unlike there, there was no "intermediate transaction". Apparently, the parties think likewise as neither party cited Pac. Transp. Co. in the opening posttrial briefs.

claim; specifically, they assert, Pacific Bank also received clear title to the Crown life policy. We find this argument unpersuasive. Although the settlement may have removed a cloud on the title of the Crown life policy, the settlement represented only the extinguishment of the lawsuit claim and did not operate to convert the character of the $500,000 proceeds received. In return for its payment of the $500,000, Pacific Bank received the extinguishment of petitioners' claim concerning the Crown life policy and nothing more. In fact, the Crown life policy both before and after the settlement states specifically that Pacific Bank is the owner of the policy. We conclude that the $500,000 was received by petitioners in extinguishment of a claim, as opposed to the sale or exchange of a capital asset and thus is taxable as ordinary income.

We have considered all arguments by petitioners for a holding contrary to that which we reach herein. To the extent not discussed, we conclude that those arguments are irrelevant or without merit.

Decision will be entered under Rule 155.